NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

NEWPORT DIV. OF WINTEX KNIT-
TING MILLS, INC., Respondent.

No. 77–1645.

United States Court of Appeals,
Sixth Circuit.

Dec. 7, 1979.

Elliott Moore, Marjorie S. Gofreed, Arnold B. Podgorsky, Deputy Associate Gen. Counsel, N. L. R. B., David Zorensky, Washington, D. C., Gilbert Cohen, Regional Atty.,

---

Region 10, N. L. R. B., Atlanta, Ga., for petitioner.

Stuart Linnick, Marc L. Silverman, Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for respondent.

Before CELEBREZZE, BROWN and JONES, Circuit Judges.

### ORDER

This case is before the Court upon the application of the NLRB, pursuant to § 10(e) of the National Labor Relations Act, for enforcement of its order issued against the Newport Division of Wintex Knitting Mills, Inc. Basically, that order requires the Company to cease and desist from giving effect to a 1974 collective bargaining agreement with the International Ladies Garment Workers Union (ILGWU), and to withdraw recognition from the ILGWU unless and until that union is certified by the Board as the exclusive representative of the employees. The Board's order is reported at 223 NLRB 1293.

In mid-1973 the Company was confronted with rival organizational campaigns on behalf of both the ILGWU and the United Textile Workers (UTW). In July, 1973, the UTW filed a representation petition with the Board and the ILGWU intervened. In the course of campaigning in the latter part of 1973, both unions filed unfair labor practice charges against the Company. The Board postponed any election until the unfair labor practice charges were resolved.

While the unfair labor practice charges were pending, the ILGWU maintained an intensive organizing effort throughout 1974. Full time organizers were assigned to the Newport plant on a full-time basis. The ILGWU signed up new employees as they were hired, which was important because of the high turnover of the plant's employees, due to the cyclical nature of the double knit business. In contrast to the ILGWU's efforts, the organizing efforts of the UTW seemed to have ceased in early 1974.

The basic issue in this case is whether any real question existed concerning representation when the Company certified the ILGWU as the exclusive bargaining representative. The Board's position is that a substantial question did exist, and that therefore it was a violation of the Act for the Company to recognize the one union when the other union, the UTW, had shown an interest in representing the employees.

The Board's position is predicated upon its policy enunciated in *Midwest Piping and Supply,* 63 NLRB 1060 (1945). Simply stated, the *Midwest Piping* rule prohibits an employer from recognizing or executing a collective bargaining agreement with one of two or more competing unions at a time when their conflicting claims raise a question concerning representation.

This Circuit has held that when one of two rival unions has convincingly demonstrated its majority status, without any help from the employer, Board orders against the employer finding an unfair labor practice on the basis of recognition and entering into a bargaining agreement will be denied. *American Bread Co. v. NLRB,* 411 F.2d 147 (6th Cir. 1969).

At the Board's hearing no evidence was adduced to show any continuing efforts by the UTW to organize the employees. Equally important, no evidence was adduced to rebut the fact that the ILGWU had majority support as evidenced by its having obtained authorization cards from 96 of the 135 employees.

In sum, a review of the record considered as a whole does not contain substantial evidence to support the Board's conclusion that the Company violated the Act by recognizing and entering into a collective bargaining agreement with the ILGWU. Therefore, it is ORDERED that enforcement of the order of the National Labor Relations Board be and hereby is denied.